IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville January 29, 2013

## STATE OF TENNESSEE v. ROY BRIAN AVANS

**Appeal from the Circuit Court for Marion County**
**Nos. 8478V.2, 8846V.1, 8847V.1      J. Curtis Smith, Judge**

_____

**No. M2012-01680-CCA-R3-CD Filed - February 13, 2013**

_____

Appellant, Roy Brian Avans, appeals the trial court's revocation of his probation and reinstatement of his effective ten-year sentence in the Tennessee Department of Correction. Appellant contends that the trial court abused its discretion by revoking his probation and ordering service of the entire sentence without properly considering other available options. We discern no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

B. Jeffery Harmon, District Public Defender, and Francis W. Pryor, Jr., Assistant District Public Defender, Jasper, Tennessee, for the appellant, Roy Brian Avans.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; J. Michael Taylor, District Attorney General; and Sherry Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Procedural History

In December 2009, appellant entered a guilty plea to aggravated burglary, and the trial court sentenced him to five years with eleven months and twenty days[1] in incarceration and the remainder of the sentence to be suspended.  Appellant subsequently garnered two

_____

[1]  Because appellant had earned 355 days, or eleven months and twenty days, of pretrial jail credit, he was immediately released upon entry of the guilty plea.

additional charges of aggravated burglary. On September 28, 2010, the trial court ordered partial revocation of appellant's probation and further ordered him to serve 219 days in jail. Appellant had earned pretrial jail credit for 144 days, and the trial court allowed him to begin participation in the drug court program while serving the remainder of the sentence, 75 days, in jail.

Appellant also entered guilty pleas to the two new charges of aggravated burglary. The trial court sentenced him to five years for each count and ordered the sentences for the two subsequent aggravated burglary convictions to run concurrently with each other but consecutively to the initial conviction, yielding an effective ten-year sentence. The trial court suspended the sentences pursuant to the terms enumerated above.

On May 4, 2012, the State obtained a probation revocation warrant alleging that appellant had committed the following violations: (1) November 2, 2010: positive drug screen for Soma and Oxycodone; (2) December 16, 2010: possession of contraband in jail; (3) May 19, 2011: positive drug screen for opiates; (4) October 13, 2011: possession of marijuana in his home and dishonesty; (5) November 11, 2011: positive drug screen for opiates; (6) November 23, 2011: positive drug screen for benzodiazepines, amphetamine, and alcohol; (7) February 2, 2012: positive drug screen for opiates; and (8) May 2, 2012: positive drug screen for Oxycodone and benzodiazepines. On the same date, the trial court terminated appellant from the drug court program. The trial court held a probation revocation hearing on June 25, 2012.

## II. Facts

At the hearing, the State called Barbara King as its first witness. Ms. King testified that she was employed by community corrections and the drug court program. One of her duties included supervising participants in the drug court program. Ms. King stated that appellant was admitted to the drug court program in September 2010. Appellant was incarcerated at the time, and employees of the drug court program would transport him and other inmates from the jail to the drug court office for group counseling. At one such meeting on October 26, 2010,[2] appellant tested positive for Oxycodone. Appellant initially denied using any drugs, but on the way back to the jail, he admitted using Oxycodone and Somas. Ms. King drove appellant back to the drug court office where appellant admitted his drug use to Ron Bailey, the director of the drug court program. Appellant was allowed to remain in the program but was sanctioned and given fifty hours of community service. The

---

[2] Many of the dates to which Ms. King testified do not align with the dates listed in the probation revocation warrant. The dates on the warrant refer to "sanction" dates, not necessarily the infraction date. Many of the sanction dates are not specifically noted in Ms. King's testimony.

drug court program also sent appellant to a ninety-day residential treatment facility, English Mountain Recovery, where he remained from December 15, 2010, to March 16, 2011.

On December 7, 2010, prior to appellant's entering the program at English Mountain Recovery, Ms. King transported inmates from the jail for a group session. At the drug court office, she witnessed a woman who was acting strangely enter their lobby and go to the bathroom. When the woman left, Ms. King searched the bathroom and found approximately ten "plugs," which she described as something used by inmates to transport contraband into the jail. She left the "plugs" or "pods" in the bathroom, notified the jail, and began the group counseling session. At the end of the session, Ms. King checked the bathroom and all of the plugs had "disappeared." When the inmates returned to the jail, they were locked down. Jailers seized tobacco during the search. Ms. King visited the jail, gathered the drug court inmates, and asked them each to write down their participation in the "contraband conspiracy." Appellant admitted that his role was to "make some more pods." He was supposed to have removed one of the pods from the bathroom, but he changed his mind and decided not to do so. Appellant was again sanctioned and was given an additional twenty-five hours of community service.

After appellant returned from English Mountain Recovery, he lived in Franklin County. On May 5, 2011, he tested positive for opiate use. Appellant denied using drugs, so Ms. King obtained an independent laboratory analysis that confirmed his use of Codeine and Morphine. Appellant then admitted that he "accidentally" took some of his daughter's liquid Codeine medicine instead of his son's liquid Ibuprofen. He was sanctioned for the positive drug screen on May 19, 2011.

On October 4, 2011, Ms. King and another drug court case manager performed a home visit at appellant's house. During the search of his home, Ms. King observed a saucer containing marijuana. Appellant attributed the marijuana to his cousin, whom he allowed to smoke in the house. Ms. King also learned that appellant's girlfriend, who was taking prescription narcotic pain medication, lived with him. This violated one of the drug court rules that participants are not to associate with individuals who have prescriptions for narcotics. Appellant initially indicated that his girlfriend did not have a problem with drug addiction. Ms. King periodically drug tested his girlfriend, but appellant later admitted that he supplied his girlfriend with "clean urine" for the drug screens. On October 13, 2011, appellant was sanctioned for possession of marijuana and his role in falsifying his girlfriend's drug screens.

On November 11, 2011, appellant tested positive for Tramadol. Before the confirmatory report arrived from the laboratory, appellant returned to the drug court office and admitted he had used his nephew's urine for that drug screen. He told Ms. King he did

so because he had obtained a prescription for opiates and had taken some of them without informing the drug court about the prescription.

Also in November, appellant tested positive for benzodiazepine, amphetamine, and alcohol. He signed a statement admitting to using Oxycontin and Xanax. He told Mr. Bailey that he and his girlfriend had gotten into a fight and that she had taken the children and left. Appellant's neighbor arrived with a six-pack of beer, so appellant drank beer with his neighbor and later took an amphetamine, an Oxycontin, and a Xanax. Appellant was sanctioned but was allowed to remain in the drug court program.

On January 23, 2012, appellant was admitted to Centerstone for intensive outpatient treatment. During his treatment, he tested positive for opiates, including Hydrocodone and Morphine. He accused his girlfriend of "putting something in his food" and denied taking the drugs. Ms. King confronted appellant and his girlfriend together about the positive drug test, at which time appellant "switched from saying [his girlfriend] put something in his food to saying that [her] family put something in his food." Appellant was again sanctioned, but this time, he went to jail. After being incarcerated for a short time, on February 13, 2012, appellant admitted to Ms. King and Mr. Bailey that no one had tampered with his food and that he had actually used Hydrocodone. Appellant was allowed to continue in the program.

On May 1, 2012, Ms. King's supervisor notified her that appellant was being transported to the emergency room because he had gotten metal shavings in his eyes. He was incarcerated but had been allowed to serve his sentence on work release. During his work release duties, he had sustained the injury. That night, Ms. King received a call from a sheriff's deputy informing her that appellant refused to submit to a drug screen. The following morning, appellant agreed to the drug screen and tested positive for "Oxys" and "Benzos." He blamed the positive drug screen on medications that the hospital administered to him. Ms. King requested that the hospital send over appellant's treatment records by facsimile. When Ms. King confronted appellant with the medical records proving that he was not given these drugs, he admitted to obtaining the drugs from people with whom he was working. He signed a statement to that effect and was terminated from the drug court program.

On cross-examination, Ms. King acknowledged that she did not receive any negative reports regarding appellant during his treatment at English Mountain Recovery. She confirmed that the May 19, 2011 sanction mandated that appellant attend additional "self-help type meetings" such as Narcotics Anonymous and Alcoholics Anonymous. The November 2011 sanction included serving three weekends in jail. Ms. King agreed that appellant is a drug addict whose major addiction is pain pills.

Ron Bailey, the director of the Twelfth Judicial District Drug Court, testified that he participated in the supervision of appellant. In reflecting on his conversations with appellant, he stated that "[t]he violations [were] all indications that [appellant] ha[d] not reached a point where he was ready to recover." Mr. Bailey stated that appellant had not been able to comply with any of the programs the drug court made available to him and that the drug court had no additional programs to offer appellant. On cross-examination, Mr. Bailey acknowledged that the program had been successful in preventing appellant from re-offending with regard to offenses against others. He also noted that appellant had children for whom he provided.

Appellant testified on his own behalf, stating that he was first convicted in Tennessee in 2009 but had been incarcerated in Alabama in 2004. He said that he was placed on probation in 2009 but that he garnered additional offenses while on probation. After he served a portion of his sentence in jail, he was admitted to the drug court program. Appellant testified that before his experience with drug court, he did not know anything about recovery, and he was not aware that he was an addict.

Appellant stated that he had two children and that he and the children's mother shared responsibility for them. He explained that the marijuana found by Ms. King belonged to his cousin. He recalled that drug court personnel told him that they "expect[ed] him to do drugs, . . . that's part of . . . recovery." He admitted that he "might have slipped up a few more time[s] than others" but then added, "[W]ho is to say how many times a recovering addict is going to mess up before he can conquer complete abstinence . . . [?]"

On cross-examination, he acknowledged that the "girlfriend" to whom Ms. King referred was the mother of his children and his "common law" wife, with whom he had been in a relationship for over twelve years. He admitted supplying her with clean urine for a drug screen because the drug court would not have allowed them to live together if she had been abusing pain killers. He said, "They would have [taken] her and my kids away from me." Appellant stated that the basis for one of his positive drug screens was that he accidentally took his daughter's Codeine cough syrup.

After consideration of the evidence presented at the probation revocation hearing, the trial court revoked appellant's probation and ordered him to serve his sentence in confinement.

### III. Analysis

We first note that appellant does not contend that the trial court erred in revoking his probation. His sole allegation is "that the trial court failed to reflect on all its options before revoking [his] probation in full . . . ."

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. 1997) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of sentence. Tenn. Code Ann. § 40-35-311(e)(1) (Supp. 2011). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

On the facts of this case, we cannot conclude that the trial court abused its discretion in ordering execution of appellant's sentence. Appellant enjoyed two opportunities to comply with the terms of a sentence involving release into the community. He failed at his first attempt by committing two new felony offenses. Even so, the trial court reinstated his probation after a brief sentence of incarceration. Appellant began abusing the privilege of the drug court program while he was still incarcerated, earning two sanctions during that time. After his release, appellant garnered six additional sanctions for violation of drug court policies. With the exception of the jail contraband offense, each of the sanctions involved controlled substances.

When a trial court revokes a defendant's probation, the court may then order the defendant to serve his or her original sentence. *See* Tenn. Code Ann. §§ 40-35-310 (2010); Tenn. Code Ann. § 40-35-311(e) (Supp. 2011). "This court has repeatedly cautioned that 'an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing.'" *State v. Juan Manuel Coronado, II*, No. E2010-01058-CCA-R3-CD, 2011 WL 704543, at *3 (Tenn. Crim. App. Mar. 1, 2011), *perm. app. denied* (Tenn. July 15, 2011) (citations omitted). Appellant in this case was not entitled to yet a third grant of probation or other form of alternative sentencing. The trial court did not abuse its discretion in ordering appellant to serve his sentence in confinement.

**CONCLUSION**

After thorough review of the record, the parties' briefs, and the applicable law, we discern no error and affirm the judgment of the trial court.

_____

ROGER A. PAGE, JUDGE